**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**4/27/2021 4:16 PM**
**CLERK OF THE COURT**
**Luke Tessman**

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT


MATTHEW MONTOYA,

     Plaintiff,

v.                      Case No. D-202-CV-2021-02607

THE J DIAMOND GROUP, INC.
d/b/a DIAMOND GROUP, and
SECTEK, INC.,

     Defendants.

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Matthew Montoya, by and through his counsel, Roybal-Mack & Cordova, P.C. (Amelia P. Nelson), pursuant to the New Mexico Rules of Civil Procedure and New Mexico statutory and common laws, and hereby files this Complaint for Damages against Defendants The J Diamond Group, The Diamond Group, and SecTek, Inc. and as grounds therefore states the following:

### NATURE OF THE ACTION

1. This Complaint asserts civil rights actions arising from retaliatory conduct and is brought under the New Mexico Whistleblower Protection Act, NMSA 1978, § 20-16C-1, *et seq.* and other applicable laws, rules, and regulations.

2. Defendant The J Diamond Group Inc. d/b/a Diamond Group as the primary company of SecTek (*hereinafter* "TDG" or "Defendant") retaliated against and unlawfully harassed Plaintiff Matthew Montoya (*hereinafter* "Mr. Montoya") in employment because of protected disclosures, grievances, in breach of contract and in violation of public policy.

### PARTIES, JURISDICTION, VENUE



3.   Plaintiff Matthew Montoya (*hereinafter* "Mr. Montoya") has been a resident of Bernalillo County, State of New Mexico at all times material to this complaint.

4.   Defendant The J. Diamond Group, Inc. d/b/a Diamond Group (*hereinafter* "TDG") is a federal contractor incorporated in the State of Texas and conducting business in the State of New Mexico and with a principal place of business and address at 1650 Tysons Blvd. Ste 925, McLean, Virginia.

5.   Defendant Diamond Group is a subsidiary of TDG (*collectively referred to as* "TDG") and has a principal place of business in Virginia.

6.   Upon information and belief, TDG operates a business location in Albuquerque, New Mexico called the Central Avenue Offices located at 508 1/2 Central Avenue.

7.   Defendant SecTek (*hereinafter* "SecTek") is a Virginia corporation and has a principal place of business in Virginia.

8.   Upon information and belief SecTek purchased TDG in or about 2012, making TDG a subsidiary of SecTek.

9.   This Court has subject matter jurisdiction over this matter and the claims because they are brought under the laws of the State of New Mexico.

10. Jurisdiction and venue are proper because Mr. Montoya was employed by TDG / SecTek at locations in Bernalillo County, Plaintiff resides in Bernalillo County, and the circumstances and transactions in this action occurred in the State of New Mexico.

## BACKGROUND & FACTS

11. Upon information and belief, TDG was founded in 1994 and is owned by SecTek.

12. TDG began operations and performs services in New Mexico.

2

13. TDG performs security services, such as providing bodyguards and conducting private investigations, personal protective services, security services to commercial enterprises and government institutions.

14. Upon information and belief, SecTek provides security management practices and technology applications to deliver protective services solutions.

15. Mr. Montoya worked as a Security Officer with TDG and SecTek.

16. On March 19, 2017, Mr. Montoya reported a believed violation committed by TDG Officer Chris Kosman to TDG Sgt. Jacobs, supervisor.

17. On March 20, 2017, TDG relieved Mr. Montoya of duty and suspended him from work.

18. On March 30, 2017, TDG terminated Mr. Montoya's employment ("3/30/18 Termination").

19. In response to the termination, Mr. Montoya filed a grievance alleging it was against policy to terminate his employment, and also filed a National Labor Relations Board complaint.

20. On April 4, 2018, TDG agreed to reverse the termination based on unjust termination and agreed to reinstate Mr. Montoya to employment as a Security Officer.

21. On April 6, 2018, James Gonzales, TDG Contract Manager, issued Mr. Montoya a Disciplinary Action Report.

22. On May 22, 2018, more than a month later, TDG actually reinstated Mr. Montoya to employment as a Security Officer, and he returned to work on June 4, 2018.

23. During this period between reinstatement and return to work, April 4th and June 4th, TDG did not pay Mr. Montoya and he was not entitled to benefits.

3

24. In late June 2018, TDG placed Mr. Montoya on leave from his employment pending confirmation of his security clearance by DHS.

25. DHS initially denied Mr. Montoya's security clearance which caused significant delay. The denial was due to a failure by TDG to submit the necessary information and documentation to address the retraction of his termination and to clear his security clearance.

26. Mr. Montoya was prevented from working between June 2018 and August 3, 2018 due to the failure to confirm the security clearance.

27. Mr. Montoya again lost wages and benefits due to the lapse in work during this time.

28. On August 2, 2018, Mr. Montoya received a letter advising that PHS was denying his security clearance and he was again termination from employment.

29. On August 3, 2018, Paul Combs, TDG/SecTek Director of Operations, issued a notice of termination to Mr. Montoya stating the basis was FPS' investigation of a "fitness to work at a government site." ("8/3/18 Termination").

30. For unexplained reasons, FPS determined Mr. Montoya was "not suitable" to work at a government work site. This occurred following the reinstatement and because of the known failure by TDG/SecTek to advise DHS of the basis for reversing the termination and agreement to reinstate.

31. Between the 8/3/19 Termination and the eventual reinstatement in January 2019 and return to work on April 6, 2019, Mr. Montoya obtained alternate employment to mitigate the damages suffered as a consequence of the second termination.

32. Mr. Montoya initiated a grievance responding to the 8/3/18 Termination.

33. In January 2019, TDG reinstated Mr. Montoya to his employment; however, he was not permitted to return to full time employment until April 6, 2019.

34. Upon his return to work, TDG refused to reinstate Mr. Montoya's seniority status, alleging that his hire date was April 6, 2019, and failed to include Paid Time Off (PTO) accruals in his paystubs and in his employment record.

35. PTO was a benefit of employment previously earned by Mr. Montoya.

36. On November 21, 2019, Mr. Montoya was involved in a minor automobile accident while working his second job with the Tesuque Casino and was issued a traffic citation.

37. TDG disciplined Mr. Montoya for the accident, despite that it was not related to his employment with TDG/SecTek.

38. On January 29, 2020, Mr. Montoya submitted a letter to James Gonzales, TDG contract manager, seeking resolution of the several terminations and lost wages and opportunities caused by the conduct.

39. On January 31, 2020, the Santa Fe County Magistrate Court dismissed the traffic citation associated with the accident.

40. On February 1, 2020, David Loera and James Gonzales, TDG employees, terminated Mr. Montoya from employment ("2/1/20 Termination") alleging he "was found to have signed out of post early" while on the job.

41. In fact, Mr. Montoya was in his vehicle located on the post, not signed out, and cleaning and changing his uniform shirt due to a coffee spill.

42. Mr. Montoya was not reinstated after the 2/1/20 Termination and he was not paid for prior losses involved with earlier terminations.

5

43. The Diamond Group Employee Handbook, 03/2008, was provided to Mr. Montoya upon his hire date.

44. The Employee Handbook states in pertinent part:

    a.  **WELCOME TO DIAMOND GROUP** This Employee Handbook was developed to describe some of the expectations of our employees and to outline the policies, programs, and benefits available to eligible employees.

    b.  **SCOPE** The policies and procedures contained with this Employee Handbook will apply to everyone employed by The Diamond Group and its Subcontractors, unless policies and/or procedures are adopted within a Collective Bargaining Agreement…

    c.  In any conflict between the Employee Handbook and a Collective Bargaining Agreement executed by the Diamond Group, the requirements set forth in the Collective Bargaining Agreement will prevail.

    d.  **EMPLOYEE'S RESPONSIBILITY** In the event that you are, or believe you are, being harassed or subjected to discrimination, you must notify the lowest level supervisor not involved in the discriminatory activity **<u>and</u>** The Diamond Group Corporate Headquarters in Dallas, Texas….

    e.  **DISPUTES AND/OR COMPLAINTS** In the event you are being mistreated or treated unfairly, perceived or real, you must notify the lowest level supervisor not involved in the activity **<u>and</u>** The Diamond Group Corporate Headquarters in Dallas, Texas….

    f.  **TABLE OF DISCIPLINARY ACTIONS SECTION 1 MISCONDUCT** *ALL SUSPENSIONS & DISCHARGES MUST BE IN WRITING*

6

## CLAIM I

## <u>(WRONGFUL DISCHARGE - RETALIATION/REPRISAL)</u>

45. Plaintiff restates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

46. Mr. Montoya opposed Defendants practices by filing grievances and complaints regarding the retaliatory and harassing conduct.

47. Defendants were notified of Mr. Montoya's concerns of breach of Employee Handbook, breach of good faith and fair dealing, retaliation, and unlawful conduct.

48. Defendants were able to discern from the context of statements that Mr. Montoya opposed allegedly unlawful employment practices.

49. Defendants, through supervisors, managers, and officials, retaliated against Mr. Montoya.

50. Defendants intentionally retaliated through a cumulative series of acts against Mr. Montoya in response to his reports of unlawful conduct.

51. Defendants retaliatory conduct was the motive behind the described actions and workplace environment.

52. Defendants are liable for damages to Mr. Montoya caused by this adverse tangible employment action.

53. Defendants' retaliatory treatment caused Mr. Montoya damages including lost past and future wages, lost benefits, loss of opportunity, and mental anguish.

54. Mr. Montoya is entitled to attorney fees and costs.

WHEREFORE, Defendants are liable to Plaintiff for lost wages (front and back pay), lost benefits, loss of opportunity, pain and suffering, mental anguish, and reasonable attorney fees and costs.

## CLAIM II

## VIOLATION OF THE NEW MEXICO WHISTLEBLOWER PROTECTION ACT NMSA 1978, § 10-16C-1 *et seq.* (2013)

55. Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

56. NMSA 1978 § 10-16C-3(C) (2013), the New Mexico Whistleblower Protection Act (NMWPA) prohibits a public employer from taking retaliatory action against a public employee because the public employee objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

57. NMSA 1978 § 10-16C-3(C)(3), governs conduct in which a plaintiff is retaliated against for objecting to or refusing to participate in an activity, policy, or practice that constitutes an "unlawful or improper act."

58. The NMWPA defines an "unlawful or improper act" as an "action or failure to act on the part of a public employer that ... constitutes ... an abuse of authority[.]" Section 10–16C–2(E)(3).

59. "Unlawful or improper act" is broadly defined in the WPA as a practice, procedure, action or failure to act on the part of a public employer that: (1) violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state; (2) constitutes malfeasance in public office; or (3) constitutes gross mismanagement, a

8

waste of funds, an abuse of authority or a substantial and specific danger to the public. Section 10-16C-2(E).

60. The purpose of the whistleblower protection act is to protect employees who risk job security for the good of the public by disclosing unlawful and improper actions of public officials.

61. The WPA prohibits a public employer from taking retaliatory action against a public employee for the following actions:  (1) raising the alarm about a public employer's unlawful or improper acts, (2) testifying about a public employer's unlawful or improper acts in a public investigation, and (3) refusing to participate in the public employer's unlawful or improper act.

62. Mr. Montoya was an employee working as an Security Officer with TDG/SecTek, a federal contractor.

63. Mr. Montoya objected to unlawful and improper acts.

64. Defendant through its employees retaliated against Mr. Montoya by terminating his employment three times, refusing to provide shifts, refusing to reinstate and return to duty in a timely manner, failing to reimburse Mr. Montoya for past lost wages and benefits, and creating an unreasonable and hostile work environment.

65. Defendants created and condoned a common scheme and system in violation of the New Mexico Whistleblower Protection Act.

66. Defendants violated the NMWPA when they discharged Mr. Montoya.

67. A public employer who violates the WPA will be liable to the employee for (1) actual damages, (2) reinstatement with the same seniority status that the employee would have had but for the violation, (3) two times the amount of back pay with interest on the back pay and (4) compensation for any special damage sustained as a result of the violation.  In addition, an

employer will be required to pay the litigation costs and reasonable attorney fees of the employee.

68. The discharge and emotional stress and anxiety caused damages, including lost wages, lost health care benefits, lost retirement benefits, pain and suffering, and emotional distress.

## CLAIM III

## BREACH OF CONTRACT

69. Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

70. An implied employment contract provision that restricts the employer's power to discharge where the facts showed that the employer either has made a direct or indirect reference that termination would be only for just cause or has established procedures for termination that include elements such as a probationary period, warnings for proscribed conduct, or procedures for employees to air grievances.

71. The TGD Employee Handbook provides specific direction and explicit promises to TDG/SecTek employees regarding reports of misconduct

72. t The TGD Employee Handbook provides specific direction and explicit promises to TDG/SecTek employees regarding progressive discipline.

73. The TGD Employee Handbook provides specific direction and explicit promises to TDG/SecTek employees regarding termination.

74. The direction and promises created a reasonable expectation of reliance that Defendants would apply and follow the TDG Employee Handbook.

75. When an employer offers to restrict its power to discharge, the employee's assent to the restriction need not be evinced by anything more than commencing or continuing employment.

76. Defendants breached the contract when it terminated Mr. Montoya founded upon baseless and known false allegations.

77. Defendants breached the contract when they failed to promptly and adequately reinstate Ms. Montoya's employment.

78. Defendants breached to contract when they refused to reinstate Mr. Montoya to his seniority status and with prior benefits.

79. Defendants conduct was retaliatory and in violation of the TDG Employee Handbook.

80. Defendants breach of contract caused damages to Mr. Montoya.

81. Mr. Montoya is entitled to damages stemming from the breach of contract including but not limited to lost wages, lost benefits, compensatory and actual damages, punitive damages, and other damages in an amount to be evidenced at trial.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests the following judgment:

(a)      Finding in favor of Plaintiff on all allegations;

(b)      Declaring that Defendants' conduct violates the laws as set forth herein;

(c)      Awarding all available and appropriate damages including compensatory, consequential, and nominal damages, accumulated interest, past and future lost wages, loss of benefits and other benefits of employment, and other available damages;

(d)      Awarding costs for the suit herein, including Plaintiff's reasonable attorneys' fees, reimbursable costs, and expert and witness fees;

(e)      Awarding just and equitable relief; and

(f)      Awarding all other and further relief that the Court deems just and proper.

Based on the foregoing, Plaintiff Matthew Montoya respectfully requests that the Court find in his favor and against Defendants on all claims, award damages and pre and post judgment interest, reimburse for reasonable attorney fees and costs, and for such other and further relief as is fair and just.

Respectfully submitted:

ROYBAL-MACK & CORDOVA, PC

*/s/ Amelia P. Nelson 4/27/2021*
AMELIA P. NELSON
*Attorneys for Plaintiff*
4901 Chappell Road NE, Suite B
Albuquerque, NM  87107
Telephone: (505) 288-3500
amelia@roybalmacklaw.com

12